The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable James A. Kinect presiding. This is our case 421-0683 and consolidated with 0711, Darwin Wilson v. Beazly et al. For the appellant, please introduce yourself. I'm Attorney Patrick Chinettan for the appellant, Darwin Wilson. And for the, you're kind of alone, as a plaintiff, and rest of counsel, if you would introduce yourself, please, beginning with Mr. Lynch. Thank you, Justice. I'm John Lynch. I represent separate appellant and appellees, Randall Beazly and Beazly Brothers, Inc. Okay, Mr. Larritz. Good afternoon. I'm Peter Larritz. I represent Appellee Norlay, Inc. And Ms. Palmer? You're muted, Ms. Palmer. Well, it was almost done. Good afternoon, Justices. My name is Veronica Palmer, P-A-L-M-E-R, and I represent Appellee N&M Transfer Company.  Yes, my name is James Ayers, and I'm an attorney from Monticello, and I represent Kashandra Patel and Irma Laban Patel and Jay Kezar Group, Inc., the original defendants. Thank you. We apologize to you for the delay. Our one o'clock oral and our discussion following that oral ran over. We don't like to make you wait any more than we want to wait, but it was necessary. I know that the bailiff has probably already impressed us upon you, but if you go over your time, you're using the time of a colleague. You don't get extra because somebody ran over, so you'll need to be aware of that. For the appellate, you may proceed, Mr. Giannetton. Thank you, Your Honor. May it please the Court. My name is Attorney Patrick Giannetton, and I represent the appellant, Darwin Wilson, in this matter. I would like to begin by saying that one of the big issues that I raised in the appeal and that almost all the defendants, aside from Beasley and Beasley Brothers, raised was the issue of open and obvious. And that issue of open and obvious has already been settled by this Court on July 14, 2022, in the case of Hudson v. Payton. And that case is now a published decision, 2022 L.F. 4th 210696. I provided a copy of it to all counsels last week. They are aware of it. But that case very clearly lays out that you cannot apply open and obvious to any case unless it deals with the condition of the land. Paragraph 42 of that decision very plainly states that we agree that the open and obvious doctrine applies in ordinary negligence cases, but only when the alleged cause of injury is a condition on the land instead of the defendant's act of negligence. This obviously is not a premises liability case. I don't think any defendant has argued that this is a premises liability case. I think that they impressed upon both the trial court and the appellate court in their briefs that open and obvious should be extended beyond premises liabilities cases based upon the Kuhn-Mookley case. And the decision in Hudson v. Payton very clearly adopted what I raised in my brief, and that's that the open and obvious doctrine does not extend to cases that do not involve the condition of the land. So we're aware of our own decisions. Yes. So thank you, Your Honor. But based on that, I just want to make it brief and indicate that I don't want to delete, draw out the issue of open and obvious since I do believe it's settled. The next issue I would like to bring up is the motion for reconsideration. I don't think all the defendants raised it, but we did raise a motion for reconsideration. The trial court indicated that we improperly brought that. Our position is clearly that we based the motion for reconsideration based upon an improper legal theory and improper application of the law, which is allowed under the statute and under the law. And I just wanted to state that briefly. The main crux of the remaining issues in this case is whether or not Darwin Wilson was negligent more than 50% as a matter of law. And that is something that courts very rarely extend is decision making process in the comparative fault statute. In fact, the comparative fault statute very clearly states that it's up to the trier fact, not the courts to make those decisions. Isn't that true with respect to a lot of issues that could be the subject of a motion for summary judgment? We have case law and case law saying proximate cause is ordinarily a question of fact, except when it's not. That is true, Your Honor. I will say that that's only when there's absolutely no issues and the facts are absolutely decided. But further, we have a statute and it's never really been stated clearly. The statute clearly states that it's for the trier fact to decide, not for the courts. That's what I'm asking you. Why would the statute saying it's a question of fact diminish in any way another statute 2105 when it comes to summary judgments or even a 2619? It seems as though, yes, it starts as an issue of fact, but anything can become a question of law if the facts are susceptible of only one interpretation. Sure. And in this case, that's the point. There are subjects to multiple interpretations. And in this case, the trial court specifically made a factual determination of its own by stating that Darwin Wilson should have taken this freight over to a loading dock and unloaded it down the street. Conversely, you could also say Randall Beasley had a forklift that was not big enough to take the load off. He is the forklift driver should have known that it wasn't a big enough forklift. He similarly should have said, I'm not going to use this forklift. I have a bigger one over at the FS building that I have partial ownership in. I'm going to bring this forklift over and use the bigger forklift instead of the smaller one. And the evidence suggests or the evidence plainly states that this load could have been unloaded with a bigger forklift. So there are definite issues of fact in this case that need to be decided by a jury. And the judge, the trial court made its own decision in this case, as a matter of law, factual findings that I don't think it's allowed to do. In citing all the cases, I think that the defendants rely largely on premises liability cases, because those premises liability cases usually deal with open and obvious. The issues of open and obvious obviously are more subject to are not as subject to interpretation and more likely to have a finding as a matter of law on the factual issues. And because of that summary judgment is much more likely and I think that's why they relied upon those heavily. The facts in this case are pretty clear that the Patel defendants ordered this freezer from Wisconsin. In doing so, they failed to coordinate the delivery of this large walk-in freezer. There was testimony from Brent Miller that this cooler was so big it's like a small building. There was Mike Roth testified that offloading these coolers require either a forklift with extensions or a loading dock. Those two important facts were known by both N&M Transfer and Norlake, but they were not communicated to Darwin Wilson. Darwin Wilson had no idea. Mike Roth testified that most forklifts have only 48 inch forks, so extensions would be required if you're going to use a regular forklift to unload this freight. Darwin Wilson was not aware of these things. Norlake and N&M Transfer were aware of issues with this type of freight dating back to at least 2014. They were having problems delivering the freight due to its bulky size and failure to make shipping arrangements and with the recipients of the freight. But the solution from Norlake was to solely have drivers like Darwin Wilson call two hours ahead of time to say this freight was going to be there. What Norlake and N&M Transfer should have done should have been to warn the drivers of the bulky nature of the freight and the requirements in getting such a big load off. Are they normally involved in taking the freight off? No, but they're acutely aware of the requirements of the people receiving the freight and the drivers that are going to have to be the ones responsible for coordinating of the unloading of freight of what needs to be done. So did your client call two hours ahead of time to make sure that was all done? I think the testimony is in the air on that one, but I don't know that he did. And I think the point of the two hour call is, I don't know that would have made a difference because he would not have been communicating, do you have a loading dock or do you have a large forklift, because he didn't know those two important things that were necessary for this freight. How many years of experience did he have already? He had quite a few years of experience as a truck driver, but not specifically. You can see the size of the load, right? Sure. Okay. But he wasn't acutely in a position to be aware of the specific requirements for this load that should have been communicated to him by Norlake and N&M Transfer. Mr. Jennett, how many other actors is Mr. Wilson's conduct being compared to? Against all the defendants in this case, meaning the Patels were apparently warned about the need to have this equipment by the people they purchased this from, Frosty Fridgeration, and they failed to obtain the proper coordination for unloading the freight. Norlake was obviously aware of it because they were the ones that palletized this package. Also, Norlake indicated that this large piece of freight always should have these pallet pockets and special palletization, which was specifically indicated by both Darwin and Wilson and Randall Beasley that they didn't have. Darwin Wilson and Randall Beasley indicated that there were just essentially boards on the bottom of the pallet without pallet pockets that allowed the load to shift. Had the proper palletization been in place that Norlake said should have been there, this load probably never would have shifted in the way that it did. Mr. Jennett, did your client have the authority to turn around and leave? Take back to the depot and still get paid for his time? Yes, he could have done that. He could have called and said that we're having issues with this freight. But as he testified, he wanted to get the load delivered and felt like he was in a position where he needed to deliver the load. Why? If I remember correctly, I think he said that there might have been some testimony that there was a prior attempt on the load. And this particular load might have been blocking things behind it. He felt economically compelled to help the client to move the freight and felt that was part of his job was his testimony. And because of that, wanted to proceed with it in the way that he did. So when they said, OK, there's an FS dock just down the street here. He didn't want to do that. Well, he didn't. His testimony was that he didn't specifically remember that conversation. But again, he's not the forklift driver. Similarly, Randall Beasley could have said if he felt it was that dangerous, I'm not going to do this. I have a larger forklift down the street in this company I have partial ownership of. I could go and get this larger forklift and unload it from this truck. And these are all issues of fact that need to be addressed by a jury and not by a trial judge. Court found that there was no proximate cause as to. And in the end, and or normally. And so, unless that's an error. Their fault would not be part of the equation would it. I think what the trial court says that there were said was that there was no evidence of any act or omission on the part of any defendant that was illegal or proximate cause of the plaintiff's injuries. That sounds like a longer way. But, essentially, the plaintiff has alleged all of these actions by the parts of the defendants that have never been disputed per se by the defendants, the failure to properly palletize the load. The failure to identify the load is potentially top heavy. The failure to identify the load as requiring a larger forklift. The failure to identify the load is, if not having a larger forklift than meeting a loading dock. These are all allegations of negligence that could be found by a jury. But unless the trial court was wrong in finding that the conduct of those two defendants was not a proximate cause legal or factual, then their conduct would not be part of our equation, correct. That's correct. But the appellate courts and the trial courts are very rarely interjecting in terms of proximate cause and determining what's a proximate cause and what isn't. They almost always leave that up to a jury, especially when there are issues of fact in a case like this, where there are so many moving parts of so many things. And where the trial court is laying the blame solely on one party when obviously there are a lot of parties involved in a lot of conduct that could be deemed as negligent by a jury. And that's why the statute is in the way it is, and why we're having this session now, because there are these moving parts, and all of these issues and allegations of negligence that are better divvied up by a jury and determined percentages of fault for each person, including the plaintiff, Randall Beasley, I mean the plaintiff, Darwin Wilson. The only other thing I'd like to say is that all of these cases cited by the defendants as previously stated are either essentially have underlying issues of either open and obvious or assumption of risk, or even sole proximate cause. And to say that, first of all, I think assumption of risk has been not allowed by the courts for issues or cases like this with the adoption of comparative fault. And that was outlined in my brief in detail in pages five, or my reply brief in pages five to eight. And in cases like this, I feel like the defendants are relying highly in leaning highly upon these premises liability cases where doctrines don't apply, because that's what they need to do with all of these moving parts and all these actors and all of this conduct that could be deemed negligent conduct by a jury. And for the court to intercede and say, this one thing should have been done and Darwin Wilson never would have been injured. You can similarly say that there are 10 things or more that could have been done before the freight even got to the unloading stage that could have prevented Darwin Wilson's injuries, and that's what's for a jury to decide. Thank you. Thank you, counsel. Mr Lynch, why don't you go first. Thank you, justices may please the court. Again, I'm john Lynch I represent a rental Beasley and Beasley brothers, and they, along with Mr errors as clients are the only direct defendants in this case. And I view the case as against my client, and I don't represent Mr errors as clients, obviously, but as against his clients is pretty simple. What the court with the trial court did in this case is decide that the plaintiff failed to meet his burden of proof. And I think that that is very supportable both by the case law, and the facts of this case. Under convict Lee and under Fisher versus crippling the courts have found that there are cases in which a court a trial court, a judge can decide that a plaintiff is more than 50% at fault for causing his own injury or entirely at fault for causing his own injury. And I will contend I contend in this case that there is no evidence of fault on the part of Randall Beasley case, who is you know went out to this site with a forklift at the request of, of the Dairy Queen franchisee, and the plaintiff to assist in moving this large load. And what happened during the course of that operation was controlled entirely by Mr. By Mr Wilson, he testified that it was his idea to come up with this, frankly unusual method of moving something out of a truck that he directed my client Randall Beasley in the movements of the forklift, and he admitted that he knew of nothing that my client did so as to cause this large object is walking cooler that was eight feet deep four feet wide and six feet high to fall off the forks of the forklift. So there was really nothing that came out in the record. During the course of this case during discovery, and I didn't hear Mr. Jeanette and say anything today that focused on my clients fault. And, you know, there are rare cases in which a court can decide on summary judgment that a plaintiff was more than 50% at fault as we see in common glee. And this is one such case, but I would again go further and say that this is a case in which the court could decide in the court frankly did decide that there was simply no evidence of fault on the part of Mr. Beasley. In fact, what Judge Vincent said. The first thing he said was, I don't think there's any question genuine issue of material fact, but that the plaintiff's injury was caused by the plaintiff's own fault. He then goes on to talk about the 50% rule, he then goes back again to talk about the, the lack of approximate cause here. So, there was ample evidence here on the part of in the in the record for Judge Vincent to decide for my client. It just simply is a case where the plaintiff failed to meet his bird. It's really that simple, in my opinion, I have a chance to come back to talk about my actions against Norlake and NNM, so I will, but I will be brief here and I will just simply say that should you decide that the trial court was wrong in granting the Beasley defendants summary judgment. I believe that if this case goes further and we have to try the case at NNM and Norlake should be right there with us. Mr. Jannett and spelled out much of the evidence that dealt with the conduct of NNM and Norlake with respect to really sending out into the marketplace package, a load a large load that might have been top heavy with no warnings associated with that, and sending Mr. Wilson out to deliver this load without proper equipment or training. But you don't even have to get Mr Lynch does that position mean that you believe that those two should have been part should be part of the assessment of fault, meaning if they if you're in the case, and there's an apportionment of fall. You think those two should be part of the math. I believe they should be part of the math. If a jury were to decide that the Beasley defendants are at fault. If the point is, the more defendants you have, the harder it is to say that the plaintiff bears 50% of that fault that shared by multiple parties. I fully agree with you justice, but I think that the first step here is to look at the plaintiff's case, which includes only keys are, and those individuals, and the Beasley defense. If, if in looking at that case own judge Finson decides or decided, which he did that, that the plaintiff failed to meet his burden the case ends there. What is unusual about this case procedurally, in my opinion, is that judge Finson decided the case, frankly, a bit backward, in that he he granted nor lakes and and and m's motions for summary judgment, and then address my motion, which made some logical sense in the way the motions were presented, but did present a bit of, you know, I guess, unusual procedural issues here before you. So I agree with you, Justice Doherty in your, in your assessment but I do think that that the first step is to assess the case against the direct defendants case are, and Beasley, and if the plaintiff fails there then the case is over and that's where I think the case should end. If that's not the case I think the whole case should should open up and we go back and do some more work on the case. Thank you counsel. Thank you, Mr airs I'd like for you to go next. Thank you, Judge. May it please the court. I'm James Ayers from the law firm of Shunkwaller and Ayers in Monticello, and I represented Beasley, the Patel and the Jake he's our group defendants. I would say that that just to sort of synthesize what we're talking about is that the driver had many opportunities where he was driving the boat, so to speak, and he was in charge, he could have taken the gone to the FS docs, he could have got the it would seem to be. But the other question is, how do you even get under the load. I mean normally as you're unloading something you don't stand underneath the load. So he was so involved in how this was all being handled, and he's underneath the load and he's like a center fielder going to catch the fly ball, and it's a bad situation. And we feel sorry for the plaintiff, but I mean I think the whole, that's why Judge Vincent I think focused on his conduct in that it was obvious that he was in charge. He was in a hurry. He wasn't using good judgment, and the easiest way would have been just a phone call back to the hub and say hey I got to bring that back. And, but he chose not to do that because he was going to make that delivery, no matter what, including standing underneath it to catch it. And so that would be what I believe the judge was assessing as he made his decision. And so I would join in Mr. Lynch's comments and suggested this case should be disposed of as Judge Vincent had ruled. Any questions for Mr. Ayers. All right, Miss Palmer we'll hear from you next. Thank you. I think the case directed against my client is a little bit different than any of the other defendants or third party defendants posturally. I am the employer of the plaintiffs. So, without, you know, I think we all know because we've all done civil litigation in our lifetimes that generally the employer is brought in to try to waive a comp lien, or to get a comp lien to compromise, and they're brought in on the theories of no training supervision, those types of things. So, looking at that aspect. For one, addressing Mr Lynch's argument. Any, there would have to be fault found against the Beasley's for anything to be found against me. But I don't think I should have to go along for the ride, as he states, because if you actually look at the allegations of the third party complaint as filed because I was the first party to file summary judgment, you will see. Number one, failed to provide a safe workplace for the plaintiff. Uncontested fact. It's not our place, we did not, it's not our workplace. Number two, failed to properly train the plaintiff, including failure to instruct him as to have properly move lift unload heavy items or materials. This is a man who said he was properly trained, didn't have any type of issue with his training self taught since 1981 is contained in Volume C of the record on pages 772 to 775, as well as Volume E on the record. He'd worked for NNM for at least three years before this incident happened. He knew the policies and procedures was, if there, and with all due respect my husband's a truck driver, and has held a CDL for years, and if there's ever an issue with safety with delivering of a load with someone rejecting a load with any issue, you call dispatch. That is your number one rule, just like you take a break in court when you're a young associate you call the firm to the partners, what do I do. That's what you do. So, it's undisputed in this case that he didn't report. He didn't call that that was the training he was provided. So they did train him, he just chose not to adhere to that. And that's in sections 3005 and 2999. He also indicated he could redeliver the load without any penalty of payment, which is in section 33 3001, he knew before any action was undertaken that day that they did not have the means to get that product off of that truck. What he did next was voluntarily all of his choice, as opposed to following the training that was provided, and they're trying to say we didn't train him. If a truck driver chooses not to follow the training that they're given the employer shouldn't shouldn't be at fault for that. He is, which is why Judge Vincent found that he was more than 50% at fault for this incident. The next allegation against us is that we failed to provide the plaintiff with proper equipment for moving lifting or unloading heavy items or materials. The plaintiff testified when he first got this load that he knew it was something big. He leaves from normal, Illinois. He doesn't ask anyone there at the center. Hey, what do I do with this thing that's something big. He had the dimensions of the load. Now he says he doesn't see the top heavy stickers, but I would circumstantially infer they were on that front. So, he knows it's big, because this incident doesn't happen till the third truck. We're resolving all inferences against you here though, right. Right. Well, but he knew judged by the facts that he's established in the record. He tried once to get the load off tried twice, and that did this. I'll call it unsafe maneuver on the third try. So he knew twice before that that thing was big. He also testified he knew it was big when he left that day, but he never asked a question, never contacted dispatch, never called the employer. So, there's all of the reasons why. And those are uncontested facts, no one else is saying anything to the letter plaintiff by his own admission says that the next allegation against us is he and the plaintiff knew what he was provided with so we knew if it couldn't happen. He called dispatch they do a redelivery. He didn't follow that train. Next, failed to provide the plaintiff with proper training concerning worksite safety. Well, he said, and I quote, nothing was unsafe about this maneuver. If I felt anything was unsafe I would call and that's at section 2999 as cited in our brief. So your time has expired. Thank you. Mr. Lawrence. Thank you. May it please the court. I'm Peter Lawrence I represent Kelly third party defendant nor Lake, Inc. My client manufactured and package, the cooler. We did not ship it, we did not unload it. We did not instruct anybody on unloading it we contracted with NNM for that. And I just want to make one thing perfectly clear because counsel has mentioned in some of the briefs, there's a suggestion that we have not denied the allegation that it was top heavy we absolutely have denied that allegation. There was one time in oral argument for Judge Benson where I said for the sake of the argument. Let's just say that it was top heavy nevertheless and on from there very clearly that was not a mission. I will try to not repeat things that other counsel has said, but there is no question that Judge Benson was well within his authority, when he determined as the trier of fact that Mr. Wilson was at fault for his injuries, that he was more than 50% responsible that nothing nor late did contributed to his injuries, and that the proximate cause or causes of his injuries were all on Mr. Wilson his decision to proceed with the talent remover is risk decision to not go to the dock at FS and use a proper size forklift and his failure to call the dispatch the contributory false statute cited by plaintiff refers to the trier of fact it does not refer to the jury, the legislature could have referred to the jury, obviously, if that's in a case where the jury demand that's the trier of fact. But when determining a summary judgment motion, sometimes the court has to determine some facts that we've got but but it not as a fact, not as a factual finding based on conflicting evidence. It's, it's a finding that there is no conflict in the evidence and that only one conclusion can be drawn. So, even if this were a bench trial. It's still a finding of fact for the trial judge on all the evidence that's that's different. I understand well in this instance I think that judge Vincent Vincent clearly determined that no other finding could be had based on the evidence, and on some of what is some of the undisputed evidence he considered the package was large, heavy and unwieldy. It was approximately 1600 pounds, five feet high. This was known to Mr. Wilson, when he tried to move it before and when he drove it around the country, or the state rather. There's no issue that when M&M had it before Mr. Wilson got to it, they were able to move it loaded unloaded around Wisconsin and Illinois. Store it in a warehouse put it on several different vehicles. There were no issues with those loadings and unloadings, because it was not unstable it was not top heavy, and it was handled by competent personnel with the appropriate. As has been mentioned, there's no issue that Mr. Wilson was instructed to contact his supervisor. If there were a problem unloading, there was a problem unloading, and he didn't contact him. Mr. Wilson was also instructed to contact the Dairy Queen before the delivery so that Dairy Queen could arrange for a safe unloading. He did not contact Dairy Queen beforehand, and there was not a safe unloading. There's no issue that Mr. Beasley suggested to Mr. Wilson that the that the cooler be unloaded at the loading docket FS where they had a proper size forklift, and that offer was not taken up. There's no dispute that when the cooler was on the pallet, the four foot wide pallet, it didn't tip over. If the if the device was so unwieldy and unbalanced as has been claimed, it presumably would have tipped over then. But the pallet was four feet wide, as was the package, so it didn't tip over. The tines of the forklift were less than four feet long, and it did tip over. It has been mentioned that Mr. Wilson and Mr. Beasley expected there to be pallet pockets. Well, they could see that there were no pallet pockets, and really the overriding bit of evidence showing that it was plaintiff's fault is the fact that when the cooler began to fall, Mr. Wilson ran towards it and reached to it. And that's when it hit him. He didn't stay where he was. He didn't try to get out of the way. And that undisputed fact by itself is sufficient to allow Judge Vincent to make his ruling. Thank you. Your time's expired. Thank you, Your Honor, Mr. Jeanette and rebuttal. Thank you, Your Honor. Briefly, I would like to point out that everything that I've heard in arguments by the defendants here sounds like a closing argument. And that's because this is a fact heavy case, and that there are multiple moving parts, and that these are issues that need to be decided, tried, argued in front of a jury for a jury to apportion fault. And what we're hearing before the court here today is a bunch of argument like you would present to a jury in closing arguments. And like I previously indicated, this is a lot of moving parts that started with the Patels that knew that this building was coming, that this small building of a freezer was coming and they didn't do the proper things that they were told to do to accept delivery of this large freight. Norlake shipped this large freight, and counsel just talked about the pallet pockets. Norlake is the one that said it should have had pallet pockets, and Darwin Wilson and Randall Beasley both said it did not have pallet pockets. So Norlake admitted that they shipped a large piece that was improperly palletized because it did not have these pallet pockets to engage the forklift times. Norlake and NNM Transfer both sent this large piece of freight out without warning the people offloading or receiving the freight of the dangers inherent in offloading and receiving it and the equipment necessary to do so. And finally, I know Randall Beasley brought up some things, and I want to point out that I think the term was that plaintiff failed to meet his burden. Again, that is something that is for a jury to decide and not the courts. All of this is veiled in what is essentially an assumption of risk, and nobody is willing to say it's an assumption of risk because they can't proceed with summary judgment on the assumption of risk based upon the existing case law. So this is something that's been shrouded in the assumption of risk, saying Darwin Wilson assumed the risk of his own injuries, therefore he's more than 50% at fault when the trial courts and the trial courts in the past universally after the adoption of the comparative fault statute have said that no longer can be done. And that's for the jury to decide. In short, I believe that the decision the trial court should be overturned for the reasons stated in the brief and for the reasons we've discussed here today. Thank you. Thank you, Council, Mr Lynch. Thank you. I would say that in response to Mr Jeanette and that perhaps I am giving the closing argument but it's a closing argument that's based upon a complete lack of evidence. This argument is no different than the argument we made to judge fence and no different than an argument that I've made many other attorneys have made to to judges in summary judgment motions. The argument is, is simply that there is no evidence of fault of proximate cause on the part of Randall Beasley, the plaintiff himself testified that he knew nothing that Mr Beasley did wrong so as to cause the answer. So the case ends there and I would, again, you know, I don't even really know Mr as well but I don't think there's any evidence as to as to the franchisee. So the case should end there. But if it does. I think the the NNM and and Norlake entities need to be back in the case, because what we did hear from them. We're closing arguments based on facts. They're the only two parties here it seems to me that are making an argument that asks you judges to decide factual issues. One of the things that neither Norlake or NNM dealt with in their briefing, as I recall, perfectly willing to be wrong, is this issue of advanced notice of this problematic delivery NNM knew that this was an ongoing issue. And the issue is, is that large loads were given to their drivers to deliver to consignees. And those consignees did not have loading docks or other equipment to safely unload the load. NNM went to Norlake and said, could we hold the load, can we hold the delivery for a day or two for planning to be done for the delivery and Norlake said no. They said no you can't. So you have to go on and make these deliveries, which is very surprising frankly to me, but they did it and NNM acquiesced to that. And so they both knew that loads were going out just like this one to individuals, just like Mr. Wilson, to deliver, and they arrive at fast food restaurants without lift gates, loading docks, large equipment to unload these loads. And if somebody isn't trained, like Mr. Wilson was not, that vacuum of experience and training is going to be filled with what? Improvisation, which is what happened here. So I don't think any of this is really surprising in terms of what happened. And Norlake was aware of this, and NNM was aware of this, and something frankly should have been done. But those parties are not direct defendants in the case. So step one is, does the plaintiff have an action, a viable action against the Beasley brothers? And again, not my client, but Kisa. I contend they do not. I contend that the plaintiff simply failed to meet his burden. There were two individuals involved, Randall Beasley and the plaintiff, and the plaintiff admitted it was all him. The case should end there, and the case should, you know, Judge Finson's decision should be affirmed. If not, I think NNM and Norlake should come back, and we all finish this case off down in Pye County. Thank you. That's all I have.